UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DANIEL A. HOCHSTINE,

                      Plaintiff,      **No. 1:14-cv-00916(MAT)**
                                                **DECISION AND ORDER**
       -vs-

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

                      Defendant.

---

**INTRODUCTION**

Daniel A. Hochstine ("Plaintiff"), represented by counsel, brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). The parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

**PROCEDURAL STATUS**

On March 25, 2010, Plaintiff protectively applied for DIB and SSI, alleging disability as of July 13, 2009. See T.287-93, 323.[1]

---

[1] Citations to "T." refer to pages from the certified transcript of the administrative record, submitted by the Commissioner in connection with her answer to the complaint.

After his claims were denied, T.180-86, Plaintiff requested an administrative hearing, which was held before administrative law judge William E. Straub ("the ALJ") on October 19, 2011. See T.53-71. Plaintiff appeared with his attorney and testified. The ALJ issued an unfavorable decision on November 7, 2011, and Plaintiff requested review by the Appeals Council. See T.150-69, 236. On January 11, 2013, the Appeals Council remanded the case to the ALJ for further consideration, and a second hearing was held before ALJ Straub on May 7, 2013. See T.72-112, 170-73. On June 14, 2013, the ALJ issued a second unfavorable decision. See T.19-47. On October 15, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's June 14, 2013 decision the final decision of the Commissioner. T.1-6, 15. This timely action followed.

For the reasons discussed below, the Court reverses the Commissioner's decision and remands the matter for further administrative proceedings, including development of the record.

**SCOPE OF REVIEW**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal standards. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court

must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION

### I. Failure to Develop the Record and Properly Consider Listing 12.05(C)

In order to be found disabled based on mental retardation under Section 12.05[2] of the Listing of Impairments, a claimant "must prove: (1) that he satisfies the definition provided for in the introductory paragraph of Section 12.05; and (2) that he satisfies the criteria listed in subsection A, B, C, or D." Antonetti v. Barnhart, 399 F. Supp.2d 199, 200 (W.D.N.Y. 2005) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, at 12.00A ("If your impairment satisfies the diagnostic

---

[2] Plaintiff notes that on August 1, 2013, Listing 12.05 was amended to change "Mental Retardation" to "Intellectual Disability," but there were no substantive changes to the Listing.

description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.")). The introductory paragraph of Section 12.05 states that "intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. A claimant who meets the introductory paragraph's criteria then must satisfy the parameters set forth in 12.05(C), by demonstrating (1) a "valid verbal performance, or full scale IQ of 60 through 70; and (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. An individual who is found to meet these requirements is presumed to be disabled at step three of the sequential process without further inquiry. See 20 C.F.R. § 404.1520(a)(4)(iii).

Plaintiff argues that he meets the first prong of Listing 12.05(C), the IQ requirement, pointing to the results of his evaluation with consultative psychologist Dr. Renee Baskin, on August 4, 2009, at the request of the State Agency. See T.426-29. Dr. Baskin performed two standardized tests, the WRAT-3, a brief screening test to measure achievement in reading recognition, spelling, and arithmetic; and the WAIS-IV, a standardized

intelligence test to measure IQ. The WRAT-3 yielded results equivalent to the seventh-grade level in reading/decoding, arithmetic, and spelling. See T.426-29. On the WAIS-IV, Plaintiff scored a full scale IQ of 70, with individual component subscores of 68 for Processing Speed, 73 for Perceptual Reasoning, 74 for Working Memory, and 81 for Verbal Comprehension. T.428. Dr. Baskin concluded that these results "are considered to be a valid and reliable estimate of [Plaintiff's] current functioning." T.427. According to Dr. Baskin, Plaintiff's weakest areas were in speed of processing and new learning, which "were the first tests administered and each time [Plaintiff] may not have been as comfortable." T.428. She commented, "[I]t is believed that his true cognitive abilities lie in the borderline range represented by three out of the four indexes," and that his full scale IQ was "negatively impacted by skewed low scores in Coding and Symbol Search." T.428. Dr. Baskin concluded that "[w]hile [Plaintiff] does have some cognitive limitations, it does not appear that this should preclude his ability to function in a workplace." T.428. Plaintiff contends that the ALJ ignored the regulations requiring him to weigh Dr. Baskin's opinion. See 20 C.F.R. § 404.1527(c) ("How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. . . ."). Furthermore, the ALJ did not mention the IQ test scores obtained by Dr. Baskin, much less give consideration to Listing 12.05(C).

As an initial matter, the Court notes that in cases with similar facts, the Commissioner has conceded that the claimant has met the first and second prongs of Listing 12.05(C). See, e.g., Barton v. Astrue, No. 3:08-CV-0810FJS/VEB, 2009 WL 5067526, at *6 (N.D.N.Y. Dec. 16, 2009) (noting that "the Commissioner concedes that Plaintiff meets the second and third requirements [of Listing 12.05(C)]: 'plaintiff has demonstrated an IQ of 70' and has 'a severe physical impairment. . . .'"; proceeding to discuss the ALJ's analysis of the remaining criteria of the listing) (quotation to record omitted). Here, the Court agrees that the ALJ's failure to consider Listing 12.05(C), and to weigh Dr. Baskin's opinion are errors requiring remand. See, e.g., Davis v. Astrue, No. 7:06-CV-00657(LEK), 2010 WL 2925357, at *3 (N.D.N.Y. July 21, 2010) ("The ALJ neglects to discuss his rationale for determining that Plaintiff's intellectual deficiencies do not meet a listing-level impairment. The record is unclear as to whether the ALJ even considered Listing 12.05(C) in assessing Plaintiff's disability, though portions of his decision suggest that the ALJ evaluated Plaintiff in light of 12.05(D). . . . It is impossible to determine whether the ALJ's decision is supported by substantial evidence because he did not document the listing criteria used[,] and evidence on the record indicates that Plaintiff may meet listing-level criteria.") (internal and other citations omitted).

The Commissioner argues that even assuming arguendo that Plaintiff satisfied the first and second prongs of 12.05(C), he cannot satisfy the remaining criteria of Listing 12.05(C), i.e., the diagnostic description in the introduction to 12.00(A), which requires certain deficits in adaptive functioning. See Sullivan v. Zebley, 493 U.S. 521, 529–30 (1990) (stating that a Social Security claimant must establish that show he meets all the criteria of a listed impairment); see also 20 C.F.R. §§ 404.1525(c)(3); 416.925(c)(3) ("[The Commissioner] will find that [a claimant's] impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement."); Talavera v. Astrue, 697 F.3d 145, 153 (2d Cir. 2012) ("While a qualifying IQ score may be prima facie evidence that an applicant suffers from 'significantly subaverage general intellectual functioning,' § 12.05, there is no necessary connection between an applicant's IQ scores and [his] relative adaptive functioning.") (citations omitted). The Court rejects the Commissioner's argument that the record evidence and Plaintiff's vocational history are inconsistent with a finding of deficits in adaptive functioning. It is well settled that "[a] reviewing court 'may not accept appellate counsel's post hoc rationalizations for agency action.'" Hamedallah ex rel. E.B. v. Astrue, 876 F. Supp. 2d 133, 144 (N.D.N.Y. 2012) (noting that by the Commissioner's

arguments "detailing the substantial evidence supporting the ALJ's decision are not a proper substitute for the ALJ engaging in the same evaluation") (quoting Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (refusing to accept Commissioner's post hoc explanation for weight given to treating physician); citation omitted).

In addition the above-discussed errors, Plaintiff faults the ALJ for disregarding his obligation to develop the record by obtaining any of his academic records. Because a disability benefits hearing is non-adversarial in nature, an ALJ generally has a duty to fully and fairly develop the administrative record, whether or not the claimant is represented by an attorney. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). Plaintiff argues that his academic records were relevant to his disability claim since Listing 12.05(C) requires that the deficits in adaptive functioning have manifested before age 22. See, e.g., Price ex rel. A.N. v. Astrue, 42 F. Supp.3d 423, 432 (E.D.N.Y. 2014) (noting that the claimant's "school record supports the inference that he has suffered from adaptive deficits since childhood"). The Court agrees.

Because the Court has concluded that the ALJ erred at step three by failing to properly assess whether Plaintiff meets or medically equals Listing 12.05(C), failing to develop the record, failing to discuss Plaintiff's IQ scores, and failing to weigh Dr. Baskin's consultative opinion, the ALJ's remaining analysis is

necessarily flawed. Barton, 2009 WL 5067526, at *8-9 (citing 20 C.F.R. § 4040.1520(a)(4) (describing the sequential evaluation process)). Therefore, the Court need not reach Plaintiff's remaining arguments. See id.

However, the Court makes one final observation concerning an issue that may arise on remand in connection with the ALJ's evaluation of Dr. Baskin's opinion and the results of the IQ test. As Plaintiff notes, Dr. Baskin found his IQ scores to be in the mentally retarded range and opined the scores to be a valid and reliable estimate of his current cognitive functioning. However, Dr. Baskin then opined that Plaintiff's "true" cognitive abilities lie in the borderline range. In Johnson v. Colvin, No. 13-CV-1055-JTC, 2014 WL 6883606, at *5 (W.D.N.Y. Dec. 4, 2014), Dr. Baskin rendered an opinion that was quite similar to the one offered here. There, with regard to the claimant's IQ scores, "Dr. Baskin noted that [the claimant] 'made a decent effort to do her best,' but it appeared that she 'gave up prematurely, all of which may have had a negative impact on final scores.' Despite this, Dr. Baskin further opined that '[t]he results of the evaluation are considered to be a valid and reliable estimate of current functioning. However, it may be a slightly lower estimate due to slow responding and some giving up.' Dr. Baskin also stated that [the claimant]'s 'true cognitive abilities lie closer to the borderline range . . . and that her cognitive limitations should

not 'preclude her ability to work in a supervised workplace.'" Johnson, 2014 WL 6883606, at *5 (citation to record omitted). The district court found that even were it to "credit[ ] Dr. Baskin's opinion that plaintiff's full scale IQ score of 65 is a 'slightly lower estimate of plaintiff's current functioning', there is no evidence that plaintiff's actual cognitive functioning is in the borderline range and that her actual IQ is over 70. Accordingly, any determination by the ALJ that plaintiff has a valid IQ score above 70, had it actually been so determined, would not have been based on substantial evidence." Id. Thus, even assuming there is an internal inconsistency in Dr. Baskin's report, this would not be a reason for the ALJ to disregard the IQ scores, since there is no evidence that Plaintiff's actual cognitive functioning is in the borderline range or that his actual IQ is over 70. As courts have noted, "IQ scores are more properly considered 'laboratory findings' resulting from diagnostic techniques, and not medical opinions." Miller v. Astrue, No. 3:07-CV-1093 LEK/VEB, 2009 WL 2568571, at *6 (N.D.N.Y. Aug. 19, 2009) (citations omitted). However, should the ALJ find that Dr. Baskin's evaluation is self-contradictory, then the ALJ is directed to contact Dr. Baskin for clarification and to obtain additional testing and evaluation, if necessary, from another practitioner.

## CONCLUSION

For the reasons discussed above, the Commissioner's motion for

judgment on the pleadings (Dkt #13) is denied. Plaintiff's motion for judgment on the pleadings (Dkt #6) is granted to the extent the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with the instructions in this Decision and Order. In particular, the ALJ is directed to develop the record sufficient so as to ensure a full and fair consideration of whether Plaintiff meets or equals Listing 12.05(C), such as by obtaining, e.g., Plaintiff's academic records; to discuss Plaintiff's IQ scores; to weigh Dr. Baskin's consultative opinion; to contact Dr. Baskin for clarification if necessary; to obtain additional cognitive testing and evaluation, if necessary; and to determine whether Plaintiff meets or medically equals Listing 12.05(C).

**SO ORDERED.**

**S/ Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   June 14, 2016
         Rochester, New York.